UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JESUS LEMUS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-159 |
| | § | |
| CMH HOMES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Pending before the Court are Defendants Vanderbilt Mortgage and Finance, Inc., CMH Homes, Inc., Clayton Homes, Inc., and Bruce Robin Moore's Joint Motion to Compel Arbitration. (D.E. 21, D.E. 27). For the reasons stated herein, Defendants' motion to compel arbitration is GRANTED.

All claims asserted by Plaintiff Jesus Lemus and all claims asserted by Intervenor Vickie Long are to be decided by binding arbitration. 9 U.S.C. § 4. The Defendants shall bear the cost of arbitration, and the venue for arbitration shall be Corpus Christi, Texas.

In addition, because the Court is satisfied that this lawsuit is referable to arbitration under the parties' agreement, the Court ORDERS that this action be STAYED pending the arbitration proceedings. 9 U.S.C. § 3.

**I. Jurisdiction**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question, because Intervenor Vickie Long brings claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and Intervention-Defendants

CMH Homes, Inc., Vanderbilt Mortgage and Finance, Inc., and Clayton Homes, Inc. properly removed the case to this Court pursuant to 28 U.S.C. § 1441.

## II. Background

On February 28, 2003, Intervenor Vickie Long executed a Retail Installment Contract ("RIC") to purchase a manufactured home from Defendants CMH Homes, Inc. ("CMH Homes") and Clayton Homes, Inc. ("CHI"), for which Defendant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") provided the financing. On March 5, 2003, a Deed of Trust ("DOT") and Builder's and Mechanic's Lien Contract ("BML") were executed, placing liens on the real property of her husband Plaintiff Jesus Lemus in order to secure Long's debt under the RIC. (D.E. 8, Ex. B; D.E. 24 at 2.)

In October 2005, after discovery of suspicious notary practices and alleged forgery at CMH Homes stores, the Defendants secretly filed hundreds of releases of DOT and BML contracts related to the mobile home purchases of customers across Texas, including the DOT and BML involved in this case. (D.E. 24 at 3.) The BML release states, in part, that CMH Homes has been "paid in full." (D.E. 24, Ex. 19.) The DOT release states, in part, that Vanderbilt "does hereby release the lien of said deed of trust and/or mortgage." (D.E. 24, Ex. 20.) According to Plaintiff and Intervenor, these releases released not only the liens on Lemus' real property, but also the debt Long incurred under the RIC. (D.E. 24 at 3-4.)

On February 3, 2010, Plaintiff Lemus filed suit in state court against Defendants CMH Homes, Vanderbilt, and CHI, and against Bruce Robin Moore, Jr. (collectively, "Defendants"). Lemus asserted several state-law claims arising from his allegation that Defendants forged his signature as well as other signatures on the DOT and BML placing liens on his property. (D.E. 24 at 3.)

On April 21, 2011, Long filed a plea in intervention, alleging that she was fraudulently induced to enter into the RIC, that her home was improperly foreclosed on, that she made payments on the home even after her debt under the RIC was "paid in full," and that Defendants engaged in unfair debt collection practices by continuing to collect on a debt that was no longer owed. Long, unlike Lemus, asserts that Defendants violated R.I.C.O., 18 U.S.C. §§ 1961-1968. (D.E. 8, Ex. B.)

On May 10, 2011, Defendants timely removed the action to this Court alleging federal question jurisdiction based on Intervenor's R.I.C.O. claims. (D.E. 1.)

On June 1, 2011, the Defendants, with the exception of Moore, filed a Motion to Compel Arbitration. (D.E. 21.) Plaintiffs have timely responded. (D.E. 24.) On June 30, 2011, Moore joined in the motion to compel arbitration. (D.E. 27.) Defendants subsequently filed a reply in support of their joint motion to compel arbitration. (D.E. 31.)

## III. Discussion

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." American Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490, 493 (5th Cir. 2006) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)); see also 9 U.S.C. § 4.

FAA Section 4 provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the

terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, . . . agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

When considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. "First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006) (internal citations and quotation marks omitted).

"The first step of the analysis – whether the parties agreed to arbitrate the dispute in question – consists of two separate determinations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" Id.

**B. Analysis**

As said, the Court first must determine whether there is a valid agreement to arbitrate between the parties. See id. Defendants argue that this dispute is subject to the arbitration clause contained in the standard retail installment contract ("RIC") used to purchase Clayton mobile homes. (D.E. 21.)[1] They allege that Long executed such a RIC on February 28, 2003, that she is

[1] The arbitration agreement in the RIC provides, in part:

> **ARBITRATION**: All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the

bound by its terms to arbitrate this dispute, and that Lemus, though he did not sign the RIC, is also bound to arbitrate because he accepted the benefits of the contract. (D.E. 24 at 2; D.E. 21 at 3.)

The Court has already found in another action against Defendants based on the same events that an identical arbitration clause covers the dispute in question and is otherwise valid as against signatories of the RIC. See Hafer et al v. Vanderbilt et al, --- F.Supp.2d ----, 2011 WL 2523610, *20 (S.D. Tex., 2011). The Court granted Defendants' motion to compel arbitration, finding all the issues raised by Plaintiffs' claims were referable to arbitration and that Defendants had not waived their right to compel arbitration. (Id.) The Court is inclined to make the same findings in this case. However, there are three distinguishing features that the Court must address before granting Defendants' motion to compel arbitration.

**1. Lemus, a Non-Signatory, Is Bound to Arbitrate**

First, unlike in Hafer, where each Plaintiff signed a RIC containing an arbitration agreement, Lemus, whose land was used as collateral to secure Long's debt under the RIC, did not sign a RIC in any of the transactions related to Long's purchase of the mobile home. (D.E. 21 at 5.)

A non-signatory is not generally required to arbitrate unless he otherwise agreed to do so. See Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1077 (5th Cir. 2002) (applying

---

> enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1... The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract.

(D.E. 21 at 4.)

Texas law, holding that the children of customers who signed a contract to purchase a mobile home were not bound to arbitrate, explaining that because the children "are not signatories to the sales contract, are not third-party beneficiaries of the agreement or contract, and are not suing on the basis of the contract, they are not bound by the arbitration agreement signed by their parents."); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ( "Arbitration under the [FAA] is a matter of consent, not coercion....").

However, in certain circumstances non-signatory plaintiffs may be compelled to arbitrate their claims. See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739-740 (Tex. 2005) (explaining various circumstances under which Texas and federal courts compel arbitration of claims of non-signatories). In In re Weekley Homes, L.P., the Texas Supreme Court explained that "[i]n some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself." 180 S.W.3d 127, 132 (Tex. 2005) (citing Astra Oil Co., Inc. v. Rover Navigation, Ltd., 344 F.3d 276, 281 (2d Cir. 2003) (holding affiliate of signatories could enforce arbitration clause as opposing party treated affiliate as part of charter contract during occurrence involved); Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) (holding nonsignatories who received lower insurance rates and ability to sail under French flag due to contract were bound by arbitration clause in it); Matter of VMS Ltd. P'ship Sec. Litig., 26 F.3d 50, 52 (7th Cir. 1994) (holding wife bound by settlement agreement related to investment services contract signed only by her husband, but under which she had accepted services as well); InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003).)

Applying this rule, the court in Weekley held that a non-signatory to a contract was required to arbitrate her personal injury claim against a home builder who had contracted with

her father to build a house. Id. at 133. The court found that the daughter had not only resided in the house, but also directed how the builder should construct many of its features and demonstrated that she considered herself a beneficiary of the house work. Id. She "repeatedly demanded extensive repairs to 'our home,' personally requested and received financial reimbursement for expenses 'I incurred' while those repairs were made, and conducted settlement negotiations with [the builder] (apparently never consummated) about moving the family to a new home." Id. The court reasoned that, "[h]aving obtained these substantial actions from [the builder] by demanding compliance with provisions of the contract, [the plaintiff could not] equitably object to the arbitration clause attached to them." Id.

Defendants argue that, like the non-signatory in Weekley, Plaintiff Lemus sought and received substantial benefits from the RIC and is thus bound by its arbitration provision. (D.E. 21 at 14.) The Court agrees. In his deposition, Lemus stated that he was present at the closing and that he considered himself a co-purchaser of the mobile home. (D.E. 21, Ex. A (Lemus Depo.) at 59) (Q: Now, when you were at the closing, your purpose of the closing was to bring the land to the closing, right? A: I was a purchaser, yes, sir…We were there to buy a house…I mean, we were a family. We were married. We were buying the house together.) Though he did not sign a RIC, Lemus signed documents giving his land as collateral to secure the purchase under the RIC. (Id. at 71, 74.) Lemus made payments on the home along with Long and understood that if they stopped making payments, they would lose the house and that he would have to give up his property as well. (Id. at 71-73.) Lemus concedes that he allowed the liens to be placed on his property in order to obtain the benefit of the RIC: i.e. ownership of the home. (Id. at 74) (Q: And you wanted the mobile home so badly you were willing to promise to sign a

contract to say if we cannot make the payment on this mobile home, we will acknowledge that our land can be foreclosed upon, right? A: Correct.)

Accordingly, the Court finds that, as in Weekley, Plaintiff Lemus obtained substantial benefits from the RIC and, as such, is bound to arbitrate claims arising under the contract pursuant to the terms of the RIC's arbitration agreement. See 180 S.W.3d at 132; see also Beach v. Green Tree Servicing LLC, 2009 WL 1759595, *4 (S.D. Tex., 2009). (holding husband who admitted he had a fifty percent interest in property that was the subject of a mortgage contract containing an arbitration provision he did not sign was bound to arbitrate statutory claims arising from the mortgage that existed between his wife and the defendant).

**2. Defendants Did Not Waive the Right to Arbitrate**

The second distinction between this case and Hafer is that, unlike in Hafer, which was filed in this Court on April 18, 2011, here Defendants recently removed this action. (D.E. 1.) The action was originally filed in state court on February 3, 2010. Litigation had been ongoing in the case for over a year before Defendants moved to compel arbitration. (D.E. 8.) Although Plaintiff and Intervenor have not noted this distinction in their response — which repeats their unsuccessful argument for waiver based on Defendants' decision to litigate rather than arbitrate in a different case involving different parties, (D.E. 24 at 14-15) — the question of whether Defendants waived their right to compel arbitration by litigating in state court for over a year before attempting to compel arbitration and removing to federal court warrants some discussion.

"Waiver of arbitration is not a favored finding and there is a presumption against it." Lawrence v. Comprehensive Business Services Co., 833 F.2d 1159, 1164 (5th Cir. 1987). Nonetheless, "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." Miller Brewing Co. v. Fort

Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir.1986). Waiver occurs when the party seeking arbitration "'engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" Keytrade USA v. Ain Temouchent M/V, 404 F.3d 891, 897 (5th Cir. 2005) (quoting Republic Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 344 (5th Cir. 2004)).

To establish waiver, Plaintiffs must show both that Defendants "substantially invoked the judicial process" and that Plaintiffs suffered prejudice as a result. Nicholas v. KBR, 565 F.3d 904, 907-908 (5th Cir. 2009). Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position. Id. at 910 (citing Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 327 (5th Cir.1999)).

Upon review of the record, it is clear that, even though the state court case was pending for more than a year, Defendants never "substantially invoked" the judicial process for purposes of finding waiver. Miller, 781 F.2d at 497. Plaintiff filed his original petition on February 3, 2010. Defendants filed their first motion to compel arbitration of Lemus' claims in state court on March 11, 2011, over a year later. (D.E. 8-2 at 1, 3.) However, although Defendants engaged in some discovery, it was apparently for the limited purpose of building a case to compel arbitration. They filed their motion to compel arbitration only a few weeks after they finished taking depositions of the parties for this purpose. (D.E. 21, Ex. A.) Once Long filed her intervention containing a claim under R.I.C.O., Defendants removed the case to this Court and filed a motion to compel arbitration of both parties' claims within a month. (D.E. 1, D.E. 21.)

These actions do not suffice to constitute waiver. In Williams v. Cigna Financial Advisors, Inc, the Fifth Circuit held that a defendant did not waive its right to seek arbitration even though defendant removed the state court action to federal court, filed a motion to dismiss

and a motion to stay proceedings, answered the complaint, asserted a counterclaim, and exchanged in discovery. 56 F.3d 656, 661-662 (5th Cir. 1995). The Court found that, regardless of these actions, the defendant had simply filed its motion to arbitrate "as soon as it discovered that the dispute was subject to arbitration." Id. at 661. Therefore, the Court held, the defendant did not "substantially invoke the judicial process. Id. at 662; see also Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285, 1300 (N.D. Okla. 2003) ("The mere passage of time cannot be relied upon as a waiver of the right to arbitrate. In fact, courts have found no waiver occurred in cases with periods of delay similar to, or even longer than, Conoco's delay in seeking arbitration in this case.") (citing Danny's Const. Co., Inc. v. Birdair, Inc., 136 F. Supp. 2d 134, 144 (W.D. N.Y. 2000; Tenneco Resins, Inc. v. Davy International, AG, 770 F.2d 416, 420-21 (eight month delay); Blumenthal-Kahn Elec. Ltd. v. American Home Assurance Co., 236 F. Supp. 2d 575, 585 (E.D. Va. 2002) (five to six months); Green v. W.R.M. & Assocs., Ltd., 174 F. Supp. 2d 459, 463-64 (N.D. Miss. 2001) (nine months after answer filed); Envirex, Inc. v. K.H. Schussler, 832 F. Supp. 1293, 1295-96 (E.D. Wis. 1993) (two years).)

As in Williams, the Court finds Defendants did not waive the right to compel arbitration even though they waited over a year to file a motion to compel arbitration. 56 F.3d at 661-662

### 3. There is Clear and Convincing Evidence of a Valid Agreement to Arbitrate

The final distinguishing feature of this case, as compared with Hafer, is that the original RIC Long signed on February 28, 2003 ("RIC 1") is missing. Defendants alleged that they have searched their records but have been unable to produce a copy of RIC 1. This is because, according to Defendants, the transaction had to be "re-closed" on March 5, 2003 due to problems with Lemus' title to the property he pledged as collateral to secure Long's home. (D.E. 21 at 5.) Defendants have produced a copy of the March 5, 2003 RIC ("RIC 2") containing what appears

to be Vickie Long's signatures. (D.E. 21, Ex. E). However, Plaintiffs contend that Ms. Long's signatures on RIC 2 are forged. (D.E. 24 at 9; D.E. 8-24 (Long Intervention) at 5, ¶ 12)). When showed a copy of RIC 2 in her deposition, Ms. Long stated that she had not signed this contract, though it was "[v]ery similar to the one [she] signed on the 28th[.]" (D.E. 24, Ex. 7 at 51.) Recognizing her signature on the document, she stated: "this appears to be a copy of my signature." (Id.)

"[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004) (quoting Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir. 2003)). This is because, if it is ultimately found no valid agreement existed, then "no agreement to arbitrate was ever concluded. The arbitrator consequently would have no authority to decide anything." Id; see also General Guaranty Ins. Co. v. New Orleans General Agency, Inc., 427 F.2d 924, 927 (5th Cir. 1970).

In deciding whether the parties had an agreement to arbitrate, the Court applies the contract law of the state governing the agreement. Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004). Under Texas law, when a contract cannot be located, it is still enforceable if its terms can be shown by clear and convincing parol evidence. Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 975 F.2d 1130, 1132 (5th Cir. 1992) (citing FED. R. EVID. 1004); In re Estate of Berger, 174 S.W. 3d 845, 847 (Tex. App. – Waco 2005, no pet.); Bank of America v. Haag, 37 S.W. 3d 55, 58 (Tex. App. – San Antonio 2000, no pet.)). In addition, Fifth Circuit case law indicates that a party attempting to enforce an arbitration agreement that has been lost or destroyed may use affidavit evidence to demonstrate the existence of the agreement.

See Banks v. Mitsubishi Motors Credit of America, 435 F.3d 538, 540-541 (5th Cir. 2005) (applying Mississippi law).

In Banks, the Fifth Circuit held that the district court erred in holding that defendants failed to show there existed a valid arbitration agreement between the parties simply because defendants failed to provide the signed arbitration agreements. Id. The defendants proffered affidavit evidence establishing, among other things, that plaintiffs had signed arbitration agreements and that those agreements could not be located. Id. The affidavit evidence was "unimpeached and uncontradicted and its credibility was in no way brought into question." Id. Because, under Mississippi law, parties may use parol evidence to prove that a contract existed and to prove its terms when the writing has been destroyed or lost, the court found that the affidavit sufficed to establish the existence of an arbitration agreement. Id. at 540; see also JPMorgan Chase Bank, N.A. v. Lott, No. 5:06cv102KSMTP, 2007 WL 30271, at *4 (S.D. Miss. Jan. 3, 2007) ("This court finds that the uncontradicted Thames affidavit establishes that an arbitration agreement existed and that the arbitration agreement is presently unavailable, and it establishes the contents of the missing arbitration agreement."); Jenkins v. Atelier Homes, Inc., No. 1081628, --- So. 3d ---, 2010 WL 3798827, at *4 (Ala. Sept. 30, 2010) (affidavit discussing terms of lost arbitration agreement was sufficient to meet initial evidentiary burden in moving to compel arbitration).

Similarly, in this case, the Court finds Defendants have met their burden to show by clear and convincing parol evidence that an arbitration agreement existed. Banks, 435 F.3d at 540-541; Bituminous, 975 F.2d at 1132. CMH and Vanderbilt have presented the affidavit of a custodians of records, Assistant Secretary for Vanderbilt, David Barton, stating that he has diligently searched the business records for RIC 1, and that RIC 1 is no longer available as it is

the policy of CMH not to keep documents that have been replaced by later documents. (D.E. 21, Ex. C, ¶ 19). They also present the affidavit of Hugh Statum, Vice President of Operations of CMH Homes, making the same declaration. (D.E. 21, Ex. D, ¶ 17). As in Banks, these affidavits are not contradicted by any competent evidence before the Court.

In addition, Long's own testimony confirms that the closing transaction occurred on February 28, 2003 and that she signed a number of closing documents on that date. (D.E. 21, Ex. B at 43) (Q: And you were asked to sign a series of documents on [February 28, 2003] were you not? A: Correct. Q: And did you sign them? A: Yes, sir.) Although Long contends she was not physically present on March 5, 2003 and did not sign RIC 2, she admitted that she signed a retail installment contract (RIC 1) on February the 28th. (Id. at 50-52). When shown a copy of RIC 2 — representative of the standard retail installment contract used in such transactions — Long attested that it was "[v]ery similar to the one I signed on the 28th." (Id. at 51.) "I did sign a retail installment contract [RIC 1], but not this one [RIC 2]." Id. at 52.

Given the affidavit testimony of Barton and Statum, as well as Long's own admissions, the Court finds there is clear and convincing evidence that Long executed RIC 1 on February 28, 2011 and that, like all Defendants' standard retail installment contracts, RIC 1 contained the binding arbitration clause. Banks, 435 F.3d at 540-541; Bituminous, 975 F.2d at 1132.

In addition, regardless of whether a new retail installment contract (RIC 2) was actually signed by Long on March 5, 2003, the records shows that Long and Lemus ratified the terms of this contract when they made payments pursuant to its terms. "Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." Sawyer v. Pierce, 580 S.W.2d 117, 122 (Tex. Civ. App. - Corpus Christi, 1979). "Ratification occurs when one, induced by fraud to

enter into a contract, continues to accept benefits under the contract after he becomes aware of the fraud, or if he conducts himself in such a manner as to recognize the contract as binding. Once a contract has been ratified by the defrauded party, the defrauded party waives any right to seek rescission." Id. Having substantially performed under the terms of RIC 2 by continually making payments according to its terms, Long and Lemus have waived their right to object that they never entered into the contract. Id. Thus, whether under RIC 1 or RIC 2, Plaintiff and Intervenor agreed to arbitrate this dispute.

As explained in Hafer with respect to identical arbitration clauses and virtually interchangeable inciting events: the arbitration agreement is not unconscionable, and all aspects of this dispute fall within the scope of the arbitration agreement. See 2011 WL 2523610 at * 20. Therefore, the Court grants Defendants' motions to compel arbitration. 9 U.S.C. § 4; see also Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996). All claims asserted by Plaintiff Jesus Lemus and all claims asserted by Intervenor Vickie Long are to be decided by binding arbitration. 9 U.S.C. § 4. The Defendants shall bear the cost of arbitration, and the venue for the arbitration shall be Corpus Christi, Texas.[2] In addition, because the Court is satisfied that this lawsuit is referable to arbitration under the parties' agreement, the Court ORDERS that this action be STAYED pending the arbitration proceedings. 9 U.S.C. § 3.

[2] The Clayton parties have agreed to pay the costs of arbitration. They state in their reply brief: "As in the Hafer case, Defendants agree to bear the cost of the arbitrator fees, which will be the only cost associated with the arbitration of the individual claims of Lemus and Long, and also agree that the venue for arbitration shall be Corpus Christi." (D.E. 31 at 2.)

## IV. Conclusion

For the reasons stated above, Defendants' motion to compel arbitration is hereby GRANTED. This action is stayed pending arbitration. 9 U.S.C. § 3.

SIGNED and ORDERED this 12th day of July, 2011.

Janis Graham Jack
United States District Judge